**Kathryne E. CEBERTOWICZ, Plaintiff,**

v.

**MOTOROLA, INC., Defendant.**

**No. 00 C 5727.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 26, 2001.

Michael W. Fleming, Law Offices of Michael W. Fleming, SC, Milwaukee, WI, for Plaintiff.

Michael A. Warner, Susan F. Gallagher, and Anne E. Duprey, Seyfarth Shaw, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

SHADUR, Senior District Judge.

Kathryne Cebertowicz ("Cebertowicz") has charged her former employer Motorola, Inc. ("Motorola") with discriminating against her in violation of the Americans with Disabilities Act ("Act," 42 U.S.C. § 12101–12117). Cebertowicz' Equal Employment Opportunity Commission ("EEOC") charge, attached to and made a part of her Complaint, alleged that Motorola had breached the Act by denying her a reasonable accommodation that would have allowed her to continue working as a Cellular Operator in spite of her asserted disability.

Motorola moved for summary judgment under Fed. R. Civ. P ("Rule") 56, and both sides have complied with this District Court's LR 56.1.[1] For the reasons con-

---

1. LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Motorola's LR 56.1(a)(3) statement as "M. St. ¶ —" and to Cebertowicz's 56.1(b)(3)(B) statement of additional facts as "C. St. ¶ —." Cebertowicz's Response to Motorola's LR 56.1(a)(3) statement is cited as "C. Resp. ¶ —," although where a M. St.

tained in this memorandum opinion and order, Motorola's motion is granted and this action is dismissed.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Motorola the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters.*, Inc., 116 F.3d 262, 265 n. 2 (7th Cir.1997)). As *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) has more recently quoted from *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994):

> A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

As with any summary judgment motion, this Court accepts nonmovant Cebertowicz' version of any disputed facts so long as that version is supported by record evidence. But assertions made in the affidavit that Cebertowicz submitted with her response to the motion are not sufficient to create genuine issues of material fact when they contradict her deposition testimony and are unsupported by any specific evidence (*Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir.1998)). What follows in the *Facts* section is culled from the parties' submissions.

### Facts

Cebertowicz was hired by Motorola in January 1995 to work as a Cellular Operator at its Libertyville, Illinois facility (M.St.¶ 2). In that position she performed various functions related to the assembly and packaging of new cellular telephones, including soldering wires onto the control panels, placing "flips" onto the telephones and inspecting and testing the assembled telephones (*id.*).

On December 13, 1996 Cebertowicz saw an allergist, who diagnosed her with allergic rhinitis and bronchial asthma (M.St. ¶¶ 10, 14). Cebertowicz' symptoms included congestion, sneezing, headaches and itchy eyes, nose and ears (M.St.¶ 10). To treat those symptoms, her doctor prescribed a combination of medication and environmental controls (M.St.¶ 19). And to assess the efficacy of those measures, her doctor conducted regular "peak flow" tests that measured her lung function after use of an inhaler. From December 1996 through April 1997 her test results ranged from 94.4% to 100.1% of the lung function that would be expected if she had no allergies or asthma (M.St.¶¶ 13, 20–26) (a peak flow of 94.4% or higher is considered "well controlled") (M.St.¶ 13). There was no indication during that period that Cebertowicz was limited in her ability to function, either at work or otherwise (M.St.¶¶ 23–26). She never missed any work due to her symptoms (M.St.¶ 28).

In May 1997 Cebertowicz reported to her doctor that her medication seemed "generally effective" except when she was at work where she was "exposed to fine dust and some odors" (M.St.¶ 27). Based on Cebertowicz' subjective report that she was continuing to experience symptoms when at work, her doctor recommended that she use a respirator mask while working (M.St.¶ 28).

---

assertion is not controverted a citation to that statement ordinarily suffices. This opinion employs the same "M." and "C." abbreviations when referring to the parties' memoranda.

Sometime after that appointment Cebertowicz asked that Motorola provide a mask for her to wear at work (M.St.¶ 29). Motorola then communicated with her physician several times to obtain additional information about her medical condition (*id.*). At Motorola's request Cebertowicz saw a second physician, who reported that if factory air quality could not be monitored, Cebertowicz would benefit from either a protective mask or a transfer to a cleaner environment (C. St.¶¶ 3–4).

Motorola declined to provide Cebertowicz with a mask (though it would have permitted her to buy and use one herself), instead allowing her to choose a transfer to an alternate duty position in the finance department effective October 29, 1997 (M.St.¶ 35). Cebertowicz was satisfied with that transfer, which she considered to be a "reasonable accommodation" (M.St. ¶ 36). While working in that alternate position, Cebertowicz experienced a significant reduction in her symptoms and was able to perform that job comfortably (*id.*). With the exception of a brief period in December 1997 when she experienced problems due to increased dust mite allergens in the winter, her allergies and asthma were "well controlled" throughout her time in that position (M.St.¶¶ 37–40, 42).

On February 4, 1999 Cebertowicz' alternate duty position ended (M.St.¶ 41).[2]

That was the last day of her employment with Motorola (*id.*).[3] After she left Motorola Cebertowicz' symptoms remained well controlled, with the exception of brief episodes of heartburn that occurred after she ate spicy foods (M.St.¶¶ 43, 45–47). Indeed, from the time that Cebertowicz was diagnosed with allergies and asthma in December 1996 through her most recently documented doctor's visit in 2001, her physician has found her symptoms to be mild, in no way impairing her ability to function either at work or outside of work (M.St. ¶ 48).

On March 15, 1999 Cebertowicz filed a charge of discrimination with EEOC, alleging that Motorola discriminated against her in violation of the Act by refusing to grant her a reasonable accommodation for her claimed disability. After she received a right to sue letter, she timely filed this action.[4]

*Cebertowicz' Claim*

■■■ Both Cebertowicz' EEOC charge and her Complaint ¶ 9 asserted that her allergies and asthma constituted a disability within the meaning of the Act. But Cebertowicz' response to Motorola's Rule 56 motion has abandoned that claim, failing to advance any argument that she qualifies as disabled under the Act.[5] In-

---

**2.** Under Motorola policy alternate duty assignments are to last no longer than six months. Motorola has provided no explanation as to why Cebertowicz' assignment lasted for more than 15 months.

**3.** Cebertowicz's deposition testimony and her affidavit present very different accounts of what she was told by Motorola at the end of her employment. Because that disparity has no effect on the outcome of this case, there is no need to delve into those details here, other than to reiterate that her deposition testimony controls over the later self-serving statements in her affidavit (*Patterson,* 150 F.3d at 724).

**4.** Originally Cebertowicz filed suit in the Eastern District of Wisconsin, and the case was then transferred to this District Court under 28 U.S.C. § 1404(a).

**5.** To qualify under the Act, a disability must either completely prevent or substantially restrict a person from performing a "major life function" (*Webb v. Clyde L. Choate Mental Health & Dev. Ctr.,* 230 F.3d 991, 998 (7th Cir.2000)). When the major life function is that of "working," the disability must substantially limit a person's ability to perform a broad range of jobs, not merely a particular job with one employer (*id.*). And Cebertowicz' difficulties with "breathing" were like-

stead she now contends—from the very outset of, and throughout, her responsive Memorandum of Law—that Motorola regarded her as disabled and discriminated against her because of that misapprehension. That maneuver fails for several reasons.

■ First, it is a new issue that was not raised in her Complaint.[6] In effect Cebertowicz has attempted to amend her Complaint—and after the close of discovery, at that—through arguments that she makes in her brief in opposition to summary judgment. That is not permitted (see, e.g., *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir.2000); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).[7]

But even if Cebertowicz' contention of being "regarded as" disabled is viewed as properly before this Court, she cannot surmount the other obstacles that block her path here. They independently defeat her claim under the Act.

■ For one thing, no evidence supports Cebertowicz' new argument that Motorola regarded her as disabled. Though she points to Motorola's having transferred her to an alternate duty position, that action alone is insufficient to defeat summary judgment. At most the transfer

supports a conclusion that Motorola believed Cebertowicz was unable to work as a Cellular Operator in its factory. Cebertowicz provides no evidence that Motorola regarded her impairment as preventing her from working in a broad class of jobs, the Act's standard (*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Webb*, 230 F.3d at 998). There is therefore no genuine issue of material fact that separates the parties on that score.

■ Finally, even if there were sufficient evidence of a genuine dispute between the parties about whether or not Motorola regarded Cebertowicz as disabled, that issue is simply not "material" for summary judgment purposes. Cebertowicz' entire case revolves around Motorola's alleged failure to provide the accommodation of a respirator mask that she contends would have permitted her to continue working in the factory. At no time—in her EEOC charge, her Complaint or her briefs—has she alleged any other discrimination against her. But because Cebertowicz was not in fact disabled, this Court joins those courts that have held an employer has no duty under the Act to provide a viewed-as-disabled (but not actually disabled) employee with *any* accommoda-

---

wise limited to the factory job. Cebertowicz now concedes that her symptoms did not substantially limit any of her activities when she was away from Motorola's factory and that her condition did not limit her ability to perform her alternate assignment in the finance department (C. Mem. 4, C. Resp.¶ 36).

6. In fact, the issue is at least arguably beyond the scope of Cebertowicz' EEOC charge. Generally plaintiffs are precluded from bringing suit on claims not included in their EEOC charges (*Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)). But that rule has been applied flexibly, allowing courts to consider any claims that are "like or reasonably related to" the allegations in the EEOC charge and that grow out of those

allegations (*id.*). Because Cebertowicz' claim fails for other reasons, this opinion need not decide whether her current argument that Motorola discriminated against her because it *regarded* her as disabled qualifies as "like or reasonably related to" her EEOC charge that Motorola discriminated against her because she *was* disabled.

7. In a sense that rule is the equivalent—though operating against a plaintiff—of the "mend the hold" principle that precludes defendants in contract actions from switching their defenses in the course of the dispute (see *United States v. Newell*, 239 F.3d 917, 922 (7th Cir.2001)).

tion (see *Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir.1999); *Newberry v. East Texas State Univ.*, 161 F.3d 276, 280 (5th Cir.1998)).[8]

Whether Motorola regarded Cebertowicz as disabled or not is thus irrelevant. Cebertowicz' failure-to-accommodate claim fails as a matter of law.

### · *Conclusion*

In sum, Cebertowicz' claim fails for a number of reasons. With there being no genuine issue of material (that is, outcome-determinative) fact, Motorola is entitled to a judgment as a matter of law. Its Rule 56 motion is granted, and this action is dismissed with prejudice.

---

**8.** In effect Cebertowicz is urging that Motorola be held liable for failing to accommodate a non-existent disability. That makes no sense—see also the discussion in the en banc opinion in *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148–49 n. 12 (3d Cir.1998), which while not being required to take an ultimate position on the issue "acknowledge[d] the considerable force of [the] argument" this Court accepts here. Of course claims other than failure to accommodate—such as discriminatory treatment—are available under the Act to plaintiffs who can demonstrate that their employers regarded them as disabled.